**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY ARLENE OWEN, | ) Case No.: 1:15-cv-01802-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING PLAINTIFF'S** |
|  | ) **SOCIAL SECURITY COMPLAINT** |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**INTRODUCTION**

Plaintiff Tracy Arlene Owen ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action.

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings in this case, including entry of final judgment. (Docs. 7, 8).

1

Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed her applications for disability insurance benefits and supplemental security income on December 27, 2011. AR 190-93, 194-201.[3] Plaintiff alleged that she became disabled on September 14, 2010. AR 194. Plaintiff's applications were denied initially and on reconsideration. AR 112-15, 122-27. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Susanne Lewald held a hearing on April 17, 2014, and issued an order denying benefits on May 20, 2014. AR 9-23, 29-63. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3, 7. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on April 17, 2014, in San Francisco, California. AR 29-63. Plaintiff appeared and testified. She was represented by Diana P. Wade. AR 33. Medical Expert Dr. Lynne Jahnke and Vocational Expert Susan L. Creighton-Clavel also appeared. AR 31.

As an initial matter, Dr. Jahnke, the medical expert ("ME"), testified that based on the review of the medical records, Plaintiff had medically-determinable impairments of chronic neck pain, bilateral carpal tunnel syndrome, occasional back pain and obesity. AR 40. Dr. Jahnke opined that none of these conditions, either singly or in combination, met or medically-equaled any of the relevant listings. AR 40-41. When asked about functional limitations, Dr. Jahnke testified that Plaintiff could lift up to ten pounds occasionally and five pounds frequently based on carpal tunnel syndrome. She had no restrictions to sit, stand or walk, but should never climb ladders or scaffolds. She frequently could balance, stoop, kneel, crouch or crawl. She could reach overhead with both hands occasionally. Her handling, fingering and feeling with the right hand would be limited to occasional and left hand to

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

frequent. She should never be at unprotected heights and should avoid concentrated exposure to extreme cold, heat and vibrations. AR 41-42. Dr. Jahnke testified that Plaintiff's condition had been at that severity since her alleged onset date in September 2010. AR 42. In response to questions from Plaintiff's representative, Dr. Jahnke further testified that Plaintiff should limit flipping her head back and forth to occasional, but should have no problem sitting and looking down while working. AR 42-43.

Following Dr. Jahnke's testimony, Plaintiff responded to questions from her representative. With regard to problems with her hands, Plaintiff testified that she occasionally gets a sharp pain in her hands when she grasps at something, such as turning a doorknob or opening a bottle of water. She also unexpectedly drops things and has trouble signing her name or writing. Her hands go numb multiple times during the day, and her hands are numb when she wakes up in the morning. AR 44. She has not seen a doctor for surgery, but is waiting for Workman's Comp to determine if they are going to include it. At least one doctor has mentioned wearing braces on her wrists, but no one has given her a brace. AR 44-45.

In connection with her neck pain, Plaintiff testified that sitting upright pulls on her neck muscles. She cannot turn her head right and left normally. She occasionally has headaches. She also has pain down into her shoulder muscles by her shoulder blades. Her worst pain is 10 out of 10 about once month, depending on her activity level. To take the pressure off of her shoulders and neck muscles, she will have to lean back on a high-back chair and put pillows under her head. Her doctor has not talked to her about wearing a neck brace. AR 45-47.

With regard to her low back pain, Plaintiff testified that she had a flare-up last April. She could not do anything for two weeks, and the pain slowly diminished over a month's period of time. AR 47.

When asked about medications, Plaintiff testified that she takes Norco for severe pain. Although it relieves about 98% of her pain, it makes her feel very drowsy. When she does not take Norco, she takes ibuprofen or naproxen, which does not really help. AR 47-48.

When asked about work, Plaintiff did not think she could work because being on a regular schedule causes stress and going out causes strain on her neck muscles. Her main issues are her neck,

hands and lower back. She also had problems with her feet, but was unable to have further treatment because she lacked medical benefits. AR 48-50.

Following questioning by her representative, Plaintiff responded to questions from the ALJ regarding her past work. Plaintiff also testified regarding her impairments, indicating that her arm pain and hands had worsened since April 2013. Plaintiff reported taking Flexeril and amyltriptiline every night and Norco occasionally. AR 52-55.

After questioning Plaintiff, the ALJ elicited testimony from the vocational expert ("VE"), Susan Creighton-Clavel. The VE categorized Plaintiff's past work as custodian/janitor and merchandise displayer. AR 55-58. The ALJ then asked the VE hypothetical questions. In the first hypothetical, the ALJ asked the VE to consider an individual of Plaintiff's age, education and experience who could lift and/or carry five pounds frequently, ten pounds occasionally, had no restrictions with respect to sitting, standing and walking, who should not work from ladders, ropes or scaffolds, could balance, stoop, kneel, crouch and crawl frequently, could reach overhead with bilateral extremities occasionally, could handle, finger and feel with the right upper extremity occasionally and frequently with the left, could push and pull restricted to the weight amounts of five pounds frequently and ten pounds occasionally, could not work from heights, and could not do work involving extremes of hot or cold temperatures or significant vibrations. The VE testified that such an individual could not perform Plaintiff's past relevant work or any other work. AR 58-59.

For the second hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and experience who could lift and/or carry ten pounds occasionally and frequently, could stand and/or walk with normal breaks for a total of two hours out of eight, could sit with normal breaks for a total of six hours out of eight, could push and pull without limitation except as for lift and carry, could climb ramps, stairs, ladders, ropes and scaffolds occasionally, could balance, stoop, and kneel occasionally, but could never crouch or crawl. This individual also could reach, handle, finger and feel frequently with the right and left hands. The VE testified that this individual could not perform any of Plaintiff's past relevant work, but could perform other work, such as telephone clerk, charge account clerk, and table worker. AR 59-60.

For the third hypothetical, the ALJ asked the VE to consider the addition of no more than occasional movement of the head beyond 50 percent of the range of motion in any direction. The VE testified that the clerical jobs and table worker job would not be affected by this change. AR 60.

**Medical Record**

The entire medical record was reviewed by the Court. AR 302-757. The relevant medical evidence is referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled. AR 12-23. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 14, 2010, her alleged onset date. AR 14. Further, the ALJ identified obesity, degenerative disc disease of the cervical and lumbar spine and carpal tunnel syndrome as severe impairments. AR 14-15. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 15.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. Plaintiff could lift and/or carry 10 pounds frequently and occasionally, could stand and/or walk with normal breaks for a total of six hours out of eight, sit with normal break for a total of six hours out of eight and push and pull without limitation except as to lift and carry. She could climb ramps and stairs, balance, stoop and kneel occasionally, could not crouch or crawl, could perform frequent bilateral overhead reaching and constant reaching in other planes, could perform frequent bilateral handling, fingering and feeling and could perform no more than occasional turning of the head beyond more than 50% of the normal range of motion. AR 15-21. The ALJ found that Plaintiff could not perform her past relevant work, but there were other jobs existing in the national economy that she could perform. AR 21-22. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from September 14, 2010, through the date of decision. AR 22-23.

///

///

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[4]

Plaintiff argues that the ALJ erred by rejecting the testimony of the non-examining medical expert, Dr. Jahnke, regarding Plaintiff's limitation to occasional fingering, handling and feeling with her right hand. (Doc. 12 at 18-20). The Commissioner counters that the ALJ was entitled to consider and evaluate the differing medical opinions regarding Plaintiff's manipulative limitations to determine Plaintiff's residual functional capacity, including the opinions of Dr. Sarupinder Bhangoo, a consultative examiner, and Dr. P. N. Ligot, a state agency medical consultant. (Doc. 13 at 7). Plaintiff replies that the ALJ erred by failing to explain why she did not adopt Dr. Jahnke's opinion regarding Plaintiff's manipulative limitations. (Doc. 14 at 3-4).

## A. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where an examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the examining physician's ultimate conclusions. *Id.* If the examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. The opinion of a non-examining physician alone is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Tonapeytan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

or examining physician's opinion). However, the opinion of a non-examining, testifying medical expert may serve as substantial evidence when it is supported by and is consistent with other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

**B. Medical Opinions**

Dr. Ligot

On October 30, 2012, Dr. Ligot completed a Physical Residual Functional Capacity Assessment. Dr. Ligot opined that Plaintiff could lift and/or carry 10 pounds occasionally and 10 pounds frequently, could stand and/or walk 2 hours, could sit about 6 hours in an eight-hour workday and could push and/or pull without limitation other than for lift and/or carry. She could climb ramps, stairs, ropes and scaffolds occasionally, could balance, stop, and kneel occasionally, but could never crouch or crawl. She did not have any manipulative, visual, communicative or environmental limitations. AR 106-07.

Dr. Bhangoo

On December 14, 2013, Dr. Bhangoo completed a consultative examination. Dr. Bhangoo opined that Plaintiff could stand and walk eight hours in an eight-hour workday, could sit eight hours in an eight-hour workday, could lift and carry 20 pounds occasionally, 10 pounds frequently, could bend, stoop and crouch frequently, and could reach, grasp, finger and feel frequently. She did not have any relevant visual, communicative, or workplace environmental limitations. Due to some evidence of carpal tunnel syndrome, she had some limitations of handling and was limited to a max weight of 20 pounds. AR 667-71.

Dr. Jahnke's Testimony

As noted, Dr. Jahnke, the non-examining medical expert, testified at the hearing that Plaintiff had the following limitations: She could lift up to ten pounds occasionally and five pounds frequently based on carpal tunnel syndrome. She had no restrictions to sit, stand or walk, but should never climb ladders or scaffolds. She frequently could balance, stoop, kneel, crouch or crawl. She could reach overhead with both hands occasionally. Her handling, fingering and feeling with the right hand would be limited to occasional and left hand to frequent. She should never be at unprotected heights and should avoid concentrated exposure to extreme cold, heat and vibrations. She also should limit

8

flipping her head back and forth to occasional, but should have no problem sitting and looking down at the same time while working. AR 41-43.

**C. Analysis**

With respect to Plaintiff's manipulative limitations, Dr. Ligot found that Plaintiff had no limitations, Dr. Bhangoo opined that Plaintiff could reach, grasp, finger and feel frequently, but had some handling limitations, and Dr. Jahnke concluded that Plaintiff could handle, finger and feel occasionally with her right hand and frequently with her left hand and could reach overhead occasionally. Given the conflicting opinions regarding Plaintiff's manipulative limitations, the ALJ was responsible for resolving the conflict. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ responsible for resolving conflicts in the medical record).

In evaluating the medical opinions, the ALJ gave "great probative weight" to Dr. Bhangoo's opinion because he examined Plaintiff and his opinion was detailed, well-supported by findings on examination, and consistent with the longitudinal treatment record. AR 19. The ALJ also gave "great weight" to the opinion of Dr. Ligot because it was consistent with the objective evidence in the record and accounted for the combined effect of Plaintiff's impairments. AR 19. Additionally, the ALJ gave "great weight" to Dr. Jahnke's opinion because she reviewed the entire treatment record, listened to Plaintiff's testimony and her opinion was consistent with the evidence. AR 21.

Following review of these opinions, the ALJ determined that Plaintiff could perform frequent bilateral overhead reaching and constant reaching in other planes and could perform frequent bilateral handling, fingering and feeling, which was consistent with Dr. Bhangoo's opinion. AR 15, 19. The ALJ was entitled to assign greater weight Dr. Bhangoo's opinion as an examining physician over the opinions of the non-examining physicians—Drs. Ligot and Jahnke. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (examining physician's opinion carries more weight than a reviewing physician); *Lester*, 81 F.3d at 830; 20 C.F.R. §§ 404.1527(c)(1), 416.927(c).

Plaintiff apparently faults the ALJ for assigning great weight to the opinion of Dr. Jahnke, but failing to adopt the opinion in its entirety, particularly Dr. Jahnke's assessed manipulative limitations. Despite Plaintiff's claim, an ALJ need not accept everything a physician sets forth, and may accept all, some or none of the physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 753-55 (9th Cir. 1989).

Plaintiff also faults the ALJ for rejecting Dr. Jahnke's manipulative limitations "without comment." (Doc. 12 at 19). While the ALJ did not expressly state that she rejected Dr. Jahnke's opinion about Plaintiff's manipulative limitations, it is readily inferred from the ALJ's opinion that she assigned greater weight to the manipulative limitations of Dr. Bhangoo. An ALJ need not recite any magic words to reject a physician's opinion where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion. *Magallanes*, 881 F.2d at 755 (incantation of magic words to reject physician's opinion not required; court not deprived of faculties for drawing specific and legitimate inferences from the ALJ's opinion); *Pacheco v. Astrue*, 2011 WL 148321, at *8 (E.D. Cal. Jan. 18, 2011).

In the paragraph discussing Dr. Ligot's findings, the ALJ provided specific and legitimate reasons for crediting Dr. Bhangoo's manipulative limitations, which are relevant to Dr. Jahnke's findings and opinion. The ALJ expressly assigned "great weight" to Dr. Bhangoo's finding that Plaintiff could perform bilateral overhead reaching and constant reaching in other planes and frequent bilateral handling, fingering and feeling because Dr. Bhangoo not only examined Plaintiff, but also reviewed recent electrodiagnostic test results. AR 19. Specifically, Dr. Bhangoo reviewed nerve conduction studies from August 2013, which showed moderate bilateral carpal tunnel syndrome. AR 649-50, 667-68. On examination, Plaintiff's Phalen's and Tinel's tests positive for pain in both wrists, but Dr. Bhangoo noted that Plaintiff put weight on her wrists without much difficulty. AR 668, 670. Dr. Bhangoo accounted for Plaintiff's moderate carpal tunnel syndrome and complaints of pain in her wrists by identifying some limitations in Plaintiff's handling, but only limited Plaintiff to frequent reaching, grasping, feeling or fingering. AR 670-71. Plaintiff has not challenged Dr. Bhangoo's findings or conclusions on examination.

For these reasons, the Court finds there was substantial evidence supporting the ALJ's decision rejecting Dr. Jahnke's opinion as to Plaintiff's manipulative limitations.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

1  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill,
2  Acting Commissioner of Social Security, and against Plaintiff Tracy Arlene Owen.

4  IT IS SO ORDERED.

   Dated:   **March 21, 2017**                    /s/ Barbara A. McAuliffe
                                              UNITED STATES MAGISTRATE JUDGE